# EXHIBIT 1



MINNEAPOLIS FOOD DISTRIBUTING
INDUSTRY PENSION PLAN
ADMINISTRATIVE SERVICE CONTRACT


This Contract has been entered into between the Board of Trustees of the Minneapolis Food Distributing Industry Pension Plan (hereinafter referred to as the "Trustees") and Kelly & Associates, Inc. (hereinafter referred to as the "Company").

1.   Nature of Contract.

1.1 The Trustees have elected to employ the Company to provide the Trustees with administrative *services* for the operation of the Plan.

1.2 The Company agrees to perform administrative services in accordance with the provisions of this Contract.

1.3 The Trustees agree to compensate the Company in accordance with the terms of this Contract for the performance of administrative services.

2.   Term of Contract. This Contract shall become effective on the 1st day of April, 1982 and remain in full force and effect until the Trustees terminate the services of the Company on the first day of any month following 30 days' written notice or the Company terminates as of the first day of any month after March 1984 and following 90 days' written notice.

Administrative Services.

3.1 Furnish, staff and maintain an office with facilities and personnel adequate to perform administrative duties and to answer inquiries of employees, employers, union and the Trustees. The office shall be open daily, Monday through Friday, except holidays, during normal working hours.

3.2 Furnish all necessary telephone service, office equipment, data processing, postage, office supplies and printing, except as otherwise provided herein. Company will be reimbursed, however, for the cost of long distance telephone charges incurred on Plan business.

3.3 Maintain all files and official documents relating to the Plan, including, but not limited to, trust agreements, Plan documents and rules, correspondence, Internal

Revenue Service filings and Department of Labor reports, pension applications, reciprocity agreements, employer participation agreements and collective bargaining agreements between participating unions and employers.

3.4 Submit reasonable reports regarding the administrative services of the Plan as may be requested by the Trustees, including without limitation, monthly and cumulative income and expense and other financial statements, monthly contributions received reports, pension applications reports and delinquent employer reports.

3.5 Upon request of the Trustees, a representative will attend the Trustees' meetings, which number approximately four per year. Prepare and mail notices of Trustees' meetings. Assist in providing facilities for such meetings and accommodations for those attending the meetings.

3.6 Arrange for the design, printing, distribution and maintenance of forms and other written materials necessary for the administration of the Plans at the Company's expense. Benefit booklets, summary annual reports and other mass mailing materials, though arranged through the Company, will be printed at the expense of the Plans.

3.7 Advise and assist in preparing summary plan descriptions and prepare summary annual reports for the Plan.

3.8 Respond to all oral and written inquiries from employers, unions or employees with regard to the administrative services of the Plan. Distribute printed Plan materials to employees, beneficiaries, employers and unions on request. The Company shall be responsible for furnishing, in a timely manner, to participants, beneficiaries, government agencies and others, information with respect to the Plan required by applicable law, provided that the Company shall be reimbursed by the Plan for any printing or mailing costs incurred in a mass mailing to all participants, beneficiaries or employers.

3.9 Establish and maintain general ledgers reflecting all receipts and disbursements of the Plan, and a proper accounting system to record the financial activity of the Plan. The financial records of the Plan shall at all times be the property of *the* Trustees.

3.10 Prepare and maintain all necessary records to permit the Plan's auditor to certify the annual financial

statements of the Plan. Cooperate with the Plan's attorney and auditor in *the* preparation of all necessary annual reports, including without limitation, tax exemption returns, tax returns, reports and plan of benefits descriptions required to be completed by the Plan pursuant to state or federal laws..

3.11 Prepare and deliver each month to each con- tributing employer an imprinted statement which shall list the name and Social Security number of all employees paid for by that employer for the preceding month. This list will *be* used by the employer as the basis for making his current payment to the Plan. Maintain information on date of original contribu- tion and date of eligibility for pension benefits of each employee.

3.12 Receive employer contributions or deposit records from the depository bank, maintain proper records concerning employer contributions, verify the accuracy of con- tributions and reports, maintain bank accounts for the Plan, deposit *funds* with the depository bank in accordance with the instructions of the Trustees and supply proper notices to contributing employers of underpayments and overpayments in accordance with the instructions of the Trustees. Prepare, circulate for signature and process all Plan disbursements, including pension checks, except that the Company will be reimbursed for mailing costs of pension checks.

3.13 Advise the Trustees and the local union, in accordance with the procedures established by the Trustees, of the failure of any employers to file reports required of them or of any employer delinquency with respect to contributions. Notify delinquent employers of the delinquency in accordance with the rules and procedures adopted by the Trustees. Beyond notification letters, the Company is not required to enforce payment of contributions by employers.

3.14 Maintain a current master listing of all employers participating in the Plan. Maintain a complete file for each employer including a historical record of the reports filed, the total number of employees reported and the amount contributed each month and year to date.

3.15 Establish and maintain complete and accurate records necessary for proper administration of the Plan regard- ing employee eligibility for benefits, and, upon request of the Trustees, supply a list of employees eligible for and receiving pension benefits in a form approved by the Trustees.

3.16 Distribute booklets, summaries of Material Modifications and Summary Annual Reports to eligible employees.

-3-

3.17 Complete Schedule SSA to Form 5500 and send notices to terminated employees concerning pension rights.

3.18 Establish and maintain data processing and other records in the form approved by the Trustees regarding employee vesting service, past service pension credit and future service pension credit. Collect the necessary documents from employers, unions and the **Social** Security Administration, supporting and establishing entitlement to past service pension credit.

3.19 Receive and process all applications for pension benefits. Forward pension application forms with instructions to applying employees. Review pension applications, employment history, evidence of age and other factors affecting qualification for a pension benefit. Interview applicants if necessary to verify or obtain information. Obtain information from other sources if.necessary to determine eligibility for a pension.

actuary's       3.20 **Prepare** census data in accordance with the
          request for an annual valuation of Plan assets.

plans and       3.21 Administer reciprocity agreements with other
ments.    circulate benefit payments pursuant to such agree-

3.22 **Process** name changes, changes in beneficiaries and similar matters. Receive, maintain and request beneficiary designation cards from employees.

3.23 Advise employees on status of payment and appeal rights when a claim is denied or submitted to the Trustees for a decision, in accordance *with* rules adopted by the Trustees.

3.24 Coordinate arrangements for Trustee **attendance** at educational seminars.

3.25 **Compute** and pay premiums on behalf of the Plan and Trustees for all insurance contracts maintained by the Trustees.

4.   Fees.

4.1 Following the close of each calendar month, the Company will prepare and submit to the Trustees an invoice

-4-

for the preceding month which indicates the number of employees reported by employers for the previous month and the agreed upon rate per employee reported.

4.2 Commencing on the effective date of this Contract, and through March 31, 1983, the fee to be paid by the Trustees to the Company per emyloyee reported per month as herein provided shall be $1.20. For the **period** from April 1, **1983 through** March 31, 1984, the fee shall be an amount agreed upon by the Trustees and the Company, but shall not exceed $1.44 per employee reported per month.

4.3 The Company or its designee shall have the right to examine all records of the Plan in order to determine the correct amount of fees to be paid to the Company under this Contract. The Trustees or their designee shall have **the** right to examine records maintained by the Company to determine the correct amount of fees that have been paid or are to be paid to the Company under this Contract.

4.4 **The** following services and items are not provided **by the** Company under this Contract:

(a) Consulting services nor payment of **consulting** fees;

(b) Legal services nor payment of legal fees;

(c) Audit services nor payment of audit fees;

(d) Actuarial services nor payment of actuarial fees;

(e) Investment services nor payment of investment fees;

(f) Preparation of and printing of insurance policies, benefit booklets and trust agreements;

(g) Trustees' expenses;

(h) Trustees' bond or errors and omissions policies;

(i) Travel expenses incurred by the Company on Plan business if approved in advance **by the Trustees; pro**vided, however, **that travel to** Trustees' meetings shall be at the Company's sole expense; or

(j) The cost of postage and printing for special mass mailings, such as summary annual reports, to employers or employees approved in advance by the Trustees.

4.5 The following items are not included in this Contract and the Company may request a fee increase if the Trustees request the Company to provide them:

(a)  Substantial changes in administrative procedures from those in force at the inception of this Contract;

(b)  Substantial changes in administrative services required by law, including changes required by the Employee Retirement Income Security Act of 1974 only if those changes are required by amendments to the Act after the effective date of this Contract; and

(c)  Substantial administrative changes due to major changes in the plan of benefits, insurance policies, eligibility rules, participation agreements or recordkeeping rules.

## 5. Ownership of Records and Documents.

5.1 The Company agrees that all books, records, forms, instruction manuals, lists of names, plates, seals, passbooks, journals, ledgers and all other recorded information necessary or desirable in connection with the administration of the Plan shall always be and remain the property of the Trustees and shall be delivered to the full Board of Trustees upon demand.

5.2 All information, materials or records stored in data processing media pertaining to the Plan, including, but not limited to, source master files, source decks, object decks, data files and program libraries are the property of the Trustees. In event of termination of administrative services, the Company agrees to:

(a)  Provide such information to the Trustees or their designee in the electronic data processing format specified by the Trustees; and

(b)  Make available to the Trustees or their designee all services necessary for an orderly transfer of such information, including but not limited to assisting the

Trustees or their **designee in** identifying, understanding and decoding said information.

       5.3 The Trustees agree that the Company is the owner of the following **materials** and the Trustees have only such rights to their use following termination of this Contract as provided herein, unless such materials were prepared at the expense of the Trustees or the Plan:

            (a)  Pension processing and payment manuals; provided, however, that the Company shall allow the Trustees or their designee sufficient access to such manuals as may be required to make possible the preparation of replacement manuals that will insure consistency in the Plan's pension processing and payment procedures before and after the termination; and

             (b)  Computer programs and data processing systems which are not specifically designed by the Company for the Plan.

       5.4 The Company will present to the Trustees or their designee all records and documents owned by the Trustees within 30 days after termination of administrative services.

       **6.**   **Indemnification.** The Company agrees to hold harmless and indemnify the Trustees and the Plan against any liability or loss with respect to all negligent or improper acts, errors, omissions and breaches of fiduciary duty by the Company, its employees and agents, to include without limitation any false, misleading or inaccurate statement, certification, report or benefit eligibility determination for which it is responsible as set forth above, provided that the liability or loss is not covered by the Trustees' fiduciary liability insurance policy or is not otherwise recouped from a third party.

       **7.**   **Arbitration.** Any dispute, controversy or claim arising out of or relating to the application of this Contract, or any part thereof, shall be settled by arbitration. During the pendency of any such dispute, controversy or claim and the arbitration thereof, the Company shall continue to perform under this Contract and the Trustees shall continue to pay to the Company all sums provided hereunder. Either party may request arbitration of a dispute, controversy or claim by filing with the other party by certified mail a written notice of its desire for arbitration, in which notice it shall set

forth the nature of such dispute, controversy or claim. If the parties cannot agree upon an arbitrator within 30 days, then either party may apply to the American Arbitration Association for the appointment of any arbitrator at a place selected by the Trustees to hear the unresolved dispute, controversy or claim, and both parties shall be bound by all rules of the American Arbitration Association. The cost of the arbitration proceedings shall be paid by the Company and the Trustees, in equal shares, and may be enforced in any court of competent jurisdiction.

8.　Force Majeure. The Company shall not be liable for any delay in, or failure of, performance of any covenants contained herein nor shall any such delay in, or failure of, performance constitute default hereunder, or give rise to any liability for damages, if, and only to the extent that, such delay or failure is caused by "Force Majeure." As used herein, the term "Force Majeure" means fire, explosions, action of the elements, strikes or other differences with workmen (lasting no longer than 30 days), restrictions or restraints imposed by law, rule, regulation or order of public authority, whether federal, state or local, and whether civil or military, acts of military authority, interruption of transportation facilities and any other cause which is beyond the reasonable control of the Company and which by the exercise of reasonable diligence the Company is unable to prevent. The existence of such causes of *such* delay or failure shall extend the term of performance on the part of the Company thereby to such extent as may be necessary to enable it to complete performance *in* the exercise of reasonable diligence after the causes of delay or failure have been removed.

9.　Performance.

9.1 No waiver of any default in performance on the part of the Company or like waiver by the Plan, of any breach or a series of breaches, of any of the terms, covenants or conditions of this Contract shall constitute a waiver of any subsequent breach or a waiver of said terms, covenants or conditions. Resort to any remedies referred to herein shall not be construed as a waiver of any other rights and remedies to which the Company is entitled under this Contract or otherwise. The Company may not assign this agreement or its interest hereunder without the express written approval of the Trustees in advance.

9.2 Should any part of this Contract for any reason be declared invalid, such decision shall not affect the validity of any remaining portion, which remaining portion shall remain in force and effect as if this Contract had been executed with the invalid portion thereof eliminated.

9.3 This Contract embodies the entire Contract and understanding of the parties and supersedes all prior oral and written communications between them. The terms hereof may be modified only by a writing signed by both parties hereto. This Contract is for the sole benefit of the Trustees and the Company and shall not be construed as granting any rights in favor of any other persons.

10. **Notice.** Any notice required or permitted to be given hereunder shall be in writing and shall *be* served upon the other party personally, or by certified mail, postage pre-paid, return receipt requested, unless otherwise provided herein. Any notice to the Company shall be addressed to it c/o 3510 West St. Paul Avenue, Milwaukee, WI 53208. Any notice to the Plan shall be addressed to the current Chairman and Secretary of the Board of Trustees. Either party may designate another address at any time by appropriate written notice to the other.

11. **Authority *of* Trustees to Execute Contract.** If this Contract is executed by fewer than all of the Trustees of the Plan, the undersigned signatory Trustees warrant that they are authorized to enter into this Contract on behalf of all Trustees of the Plan and to bind the Plan to the terms hereof.

This Contract shall be to the benefit o and shall be binding upon, the Company and its successors *and* he Trustees and their successors.

IN WITNESS WHEREOF, the parties hereto have caused this Contract to be signed and executed by their authorized representatives on this      day of    , 19

*KELLY & ASSOCIATES, INC.*

BY_____ (SEAL)

BY_____ (SEAL)

BOARD OF TRUSTEES
MINNEAPOLIS FOOD DISTRIBUTING

BY _____
Chairman

BY _____
Secretary

INDUSTRY PENSION PLAN

**MINNEAPOLIS FOOD DISTRIBUTING INDUSTRY PENSION PLAN**

**Amendment to Administrative Service Contract**

This is an amendment to the contract between the Board of Trustees of the Minneapolis Food Distributing Industry Pension Plan (the "Trustees") and Zenith Administrators, Inc. (formerly Kelly & Associates, Inc.) (the "Company").

Section 4.2 of the contract is revised to provide that effective January 1, 2006, the annual fee to be paid by the Trustees to the Company shall be $70,000, payable in equal monthly installments. Commencing January 1, 2007, the annual fee shall be $72,100, payable in equal monthly installments. Commencing January 1, 2008, the annual fee shall be $74,263, payable in equal monthly installments. The Company guarantees this fee for the period January 1, 2006 through December 31, 2008 and shall not terminate its services during that period, except that if the combined number of retirees and active employees increases by greater than 10% from its number as of December 31, 2005, or if any of conditions in section 4.5 arises, the Company may terminate its services if a mutually acceptable fee is not agreed to after 90 days written request by Company to the Trustees.

In all other respects, the contract originally dated as of April 1, 1982 and amended as of June 1, 1989, June 1, 1991, January 1, 1993, January 1, 1996, January 1, 1999, and January 1, 2002, shall be and remain in full effect.

IN WITNESS WHEREOF, the parties hereto have caused this amendment to be signed and executed by their authorized representatives as of the 1' day of January 2006.

ZENITH ADMINISTRATORS, INC.

By: _____

BOARD OF TRUSTEES
MINNEAPOLIS FOOD DISTRIBUTING INDUSTRY
PENSION PLAN

By: _____

By: _g-0-0"-A;20e-e.e...-_

**MINNEAPOLIS FOOD DISTRIBUTING INDUSTRY PENSION PLAN**

**Amendment to Administrative Service Contract**

This is an amendment to the contract between the Board of Trustees of the Minneapolis Food Distributing Industry Pension **Plan** (the "Trustees") and Zenith Administrators, Inc. (formerly Kelly & Associates, Inc.) (the "Company").

Section 4.2 of the contract is revised to provide that effective January 1, 2002, the fee to be paid by the Trustees to the Company per employee reported per month shall be $3.90 and the fee to be paid by the Trustees to the Company per retiree per month shall be $0.40. Commencing January 1, 2003, the fee shall be $4.10 per employee reported per month and $0.42 per retiree per month. Commencing January **1,** 2004, the fee shall be $4.25 per employee reported per month and $0A4 per retiree per month.

In all other respects, the contract originally dated as of April 1, 1982 and amended as of June 1, 1989, June 1, 1991, January 1, 1993, January 1, 1996, and January 1, 1999, shall be and remain in full effect.

IN WITNESS WHEREOF, the parties hereto have caused this amendment to be signed and executed by their authorized representatives as of the e$^t$ day of January 2002.

ZENITH ADMINISTRATORS, INC.

By: _____

BOARD OF TRUSTEES
MINNEAPOLIS FOOD DISTRIBUTING INDUSTRY
PENSION PLAN

By: IS-..t.–1-0tetk _____

By ___id-e-o.C)_____

# MINNEAPOLIS FOOD DISTRIBUTING INDUSTRY PENSION PLAN

## Amendment to Administrative Service Contract

This is *an* amendment to the contract between the Board of Trustees of the Minneapolis Food Distributing Industry Pension Plan (the "Trustees") and Zenith Administrators, Inc. (formerly Kelly & Associates, Inc.) (the "Company").

Section 4.2 of the contract is revised to provide that effective January 1, 1999, the fee to be paid by the Trustees to the Company per employee reported per month shall be $3.45 and the fee to be paid by the Trustees to the Company per retiree per month shall be $0.34. Commencing January 1, 2000, the fee shall be $3.60 per employee reported per month and $0.36 per retiree per month. Commencing January 1, 2001, the fee shall be $3.75 per employee reported per month and $0.38 per retiree per month.

In all other respects, the contract originally dated as of April 1, 1982 and amended as of June 1, 1989, June 1, 1991, *January 1,* 1993, and *January 1,* 1996, shall be and remain in *full effect.*

IN WITNESS WHEREOF, the parties hereto have *caused* this amendment to *be signed and* executed by their authorized representatives as of the 1st day of January 1999.

ZENITH ADMINISTRATORS, INC.

By:

BOARD OF TRUSTEES
MINNEAPOLIS FOOD DISTRIBUTING INDUSTRY
PENSION PLAN

By:

By:

**MINNEAPOLIS FOOD**     *UTING* **INDUSTRY PENSION PLAN**

### Amendment to Administrative Service Contract

This is an amendment to the contract between the Board of Trustees of the Minneapolis Food Distributing Industry Pension Plan (the "Trustees") and Zenith Administrators, Inc. (formerly Kelly & Associates, Inc.) (the °Company").

Section 4.2 of the contract is revised to provide that effective JAnivary 1, 1996, to be paid by the Trustees to the Company per employee reported per month shall be $3.1 S and an additional fee equal to $30 per retiree per month shall also be paid as of that date. Commencing January 1, 1997, the fee shall be $3.30 per employee reported per $.32 per retiree. The Company guarantees this fee for the 24 month period ginning January 1, 1996 and shall not terminate its *services* earlier than December 31, 1997.

In all other respects, the contract originally dated as of April 1, 1982 and amended as of June 1, 1989, June 1, 1991, and January 1, 1993 shall be and remain in full effect.

IN WITNESS WHEREOF, the parties hereto have caused this amendment to signed and. executed by their authorized representatives as of the 1st day of January, 1996.

ZENITH ADMINISTRATORS, INC.

By: _____

BOARD OF TRUSTEES
MINNEAPOLIS FOOD DISTRIBUTING INDUSTRY
PENSION PLAN

By: _____

By: _____

# MINNEAPOLIS FOOD DISTRIBUTING INDUSTRY PENSION AN

## Amendment to Administrative Service Contract

This is an amendment to the contract between the Board of Trustees of the Minneapolis Food Distributing Industry Pension Plan (the "Trustees") and Zenith Administrators, Inc. (formerly Kelly & Associates, Inc.) (the "Company").

Section 4.2 of the contract is revised to provide that effective January 1, 1996, the fee to be paid by the Trustees to the Company per employee reported per month shall be $3.15 and an additional fee equal to $.30 per retiree per month shall also be paid as of that date. Commencing January 1, 1997, the fee shall be $3.30 per employee reported per month and $.32 per retiree. The Company guarantees this fee for the 24 month period beginning January 1, 1996 and shall not terminate its services earlier than December 31, 1997.

In all other respects, the contract originally dated as of April 1, 1982 and amended as of June 1, 1989, June 1, 1991, and January 1, 1993 shall be and remain in *full effect.*

IN WITNESS WHEREOF, the parties hereto have caused this amendment to be signed and executed by their authorized representatives as of the 1st day of January, 1996.

ZENITH ADMINISTRATORS, INC.

BY _____

BOARD OF TRUSTEES
MINNEAPOLIS FOOD DISTRIBUTING INDUSTRY
PENSION PLAN

By: _____

By: _____

**MINNEAPOLIS FOOD DISTRIBUTING INDUSTRY PENSION PLAN**

**Amendment to Administrative Service Contract**

This is an amendment to the contract between the Board of Trustees of the Minneapolis Food Distributing Industry Pension Plan (the *"Trustees"*) and Zenith Administrators, *Inc.* (formerly Kelly & Associates, Inc.) (the "Company").

Section 4.2 of the contract is revised to provide that effective January 1, 1993, the fee to be paid by the Trustees to the Company per employee reported per month shall be $3.00 and shall be $3.15 effective January 1, 1994. The Company guarantees this fee for the 24 month period beginning January 1 1993 and shall not terminate its services earlier than December 31, 1994.

In all other respects, the contract originally dated as of April 1, 1982 and amended as of June 1, 1989 and June 1, 1991, shall be and remain in full effect.

IN WITNESS WHEREOF, the parties hereto have caused this amendment to be signed and executed by their authorized representatives as of the 1st day of January, 1993.

**ZENITH ADMINISTRATORS, INC.**

_____

**BOARD OF TRUSTEES**
**MINNEAPOLIS FOOD DISTRIBUTING**
**PENSION PLAN**

By: _____
      Chairman

By: _____
      Secretary

By: _____ 17-

# MINNEAPOLIS FOOD DISTRIBUTING

## INDUSTRY PENSION PLAN
### Amendment to Administrative Service Contract

**This** is an amendment to the contract **between** the Board of Trustees of the Minneapolis Food Distributing Industry Pension Plan (the "Trustees") and Zenith Administrators, Inc. (formerly Kelly & Associates, Inc.) (the "Company").

Section 4.2 of the contract is revised to provide that effective June 1, 1991, the fee to be paid by the Trustees to the Company per employee reported per month shall be $2.70. The Company guarantees this fee for the 12-month period beginning June 1, 1991 and shall not termi▶ate its services earlier than May 31, 1992.

In all other respects, the contract originally dated as of April 1, 1982 and amended as of June 1, 1989, shall be and remain in full effect.

IN WITNESS WHEREOF, the parties hereto have caused this amendment to be signed and executed by their authorized representatives as of the 1st day of June, 1991.

ZENITH ADMINISTRATORS, INC.

By: _____

BOARD OF TRUSTEES
MINNEAPOLIS FOOD DISTRIBUTING
  INDUSTRY SION PLAN
By: _____

By: _____

# MINNEAPOLIS FOOD DISTRIBUTING

## INDUSTRY PENSION PLAN

Amendment to Administrative Service Contract

This is an amendment to the contract between the Board of Trustees of the Minneapolis Food Distributing Industry Pension Plan (the *"Trustees"*) and Kelly & Associates, Inc. (the *Company*").

Section 4.2 of the. contract is revised to provide that effective June 1, 1989, the *fee* to be paid by the Trustees to the Company per employee reported per month shall be $2.45. The Company guarantees this fee for the 12-month period beginning June 1, 1989 and shall not terminate its services earlier than May 31, 1990.

In all other respects, *the* contract originally dated as of April 1, 1982 shall be and remain        effect.

IN WITNESS WHEREOF, the parties hereto have caused this amendment to be signed and *executed* by their authorized representatives as of the 1st day of *June,* 1989.

KELLY & ASSOCIATES, INC.

_____

BOARD OF TRUSTEES
MINNEAPOLIS FOOD DISTRIBUTING

By: _____

# MINNEAPOLIS FOOD DISTRIBUTING

## INDUSTRY PENSION PLAN
### Amendment to Administrative Service Contract

## INDUSTRY PENSION PLAN

_____